# Supreme Court of the Navajo Nation

**Eddie J. Arthur, Shirley O. John, Katherine D. Arthur,
Arlene Gorman, John Wilson Jr., and Betty J. Notah,
as a Recall Committee for the removal of Many
Farms Chapter Council Delegate, Appellants,**
v.
**Navajo Board of Election Supervisors, and
Marlene Thomas, Council Delegate for
Many Farms Chapter, Appellees.
Decided June 26, 1998**

## OPINION

Before YAZZIE, Chief Justice, AUSTIN and CADMAN, Associate Justices.

Tom Laughter, Esq., Shonto, Navajo Nation (Arizona), for the Appellants; and Steven Boos, Esq., and Ron D. Haven, Esq., Navajo Office of Legislative Counsel, Window Rock, Navajo Nation (Arizona), for the Appellees.

Opinion delivered by CADMAN, Associate Justice.

This is an appeal of a decision of the Navajo Board of Election Supervisors (Board) which invalidated a petition to recall an elected official pursuant to the Navajo Election Code, 11 N.N.C. §§ 1-408 (1995).

I

The Appellants are Eddie J. Arthur, Shirley O. John, Katherine D. Arthur, Arlene Gorman, John Wilson Jr., and Betty J. Notah. On December 2, 1996, the Appellants filed an affidavit with the Navajo Election Administration ("Election Administration") organizing themselves as a committee (hereafter "Recall Committee") to recall Marlene Thomas, Many Farms Chapter Council Delegate. Under the Election Code, the Recall Committee had to file 497 valid signatures to recall Delegate Thomas. 11 N.N.C. § 241(A). This figure is sixty percent of the number of votes cast in the November 8, 1994 election for the Many Farms Chapter council delegate position. See *id.* The law also allowed the Recall Committee 180 days from December 2, 1996 (or June 2, 1997) to file its recall petition with the Election Administration. 11 N.N.C. § 242(A).

On February 26, 1997, the Recall Committee filed its initial recall petition containing 502 signatures on thirty-nine pages for verification with the Election

Administration. Sometime prior to March 7, 1997, the Election Administration informed the Recall Committee by telephone that its initial petition was insufficient, meaning it did not contain enough valid signatures to force a recall election. Transcript at 59. On March 7, 1997, the Recall Committee filed a second petition containing fourteen signatures on one page for verification. The record shows that the Election Administration added these fourteen names to the initial petition containing 502 names and completed verification of them on March 11, 1997. The Election Administration then informed the Recall Committee by telephone, transcript at 64, that after having checked the 516 signatures, 189 more valid signatures were needed to make the recall petition sufficient. The Recall Committee proceeded believing that its members could continue to collect signatures and file additional petitions until June 2, 1997.

The Recall Committee filed additional signatures with the Election Administration on three more occasions: 63 on April 10, 1997; 17 on April 28, 1997; and 155 on June 2, 1997. Meanwhile on April 28, 1997, the Election Administration ceased verifying signatures because Recall Committee members became belligerent after being informed that they still needed more valid signatures. Transcript at 62. On June 24, 1997, the Election Administration notified the Recall Committee's counsel that as of June 2, 1997, the Committee had finally filed the required number of signatures to make the recall petition sufficient. On June 26, 1997, the Board certified the recall petition as sufficient.

On July 7, 1997, Delegate Thomas challenged the Board's finding of sufficiency and certification on two grounds: 1) forty-six signatures on the recall petitions were invalid due to forgery, coercion, misunderstandings on the reason for the petition, and death; and 2) the Election Administration and the Board violated 11 N.N.C. § 242(C) by accepting and verifying more than two recall petitions. Section 242(C) states as follows:

> In the event a petition is insufficient, the director shall simultaneously notify the Board and the petitioners' committee of his or her findings and the reasons why the petition is insufficient. The committee may withdraw the petition and within fifteen (15) days thereafter, refile the amended petition as an original petition. The fifteen (15) day period shall be in addition to the 180 day period set out at 11 NNC § 242(A).

11 N.N.C. § 242(C).

On July 24, 1997, the Board invalidated the recall petition following a hearing because more than two recall petitions had been filed with the Election Administration for verification in violation of section 242(C) and Rule 9(C) of the Recall Rules and Regulations. The Board ruled that only two recall petitions, the initial and an amended, can be filed and verification can be done only twice. Board's Final Order at 3 (July 24, 1997). The Board found that the filing "of additional names, upon notice of initial insufficiency, constitutes 'refil[ing]' of an 'amended petition'" and that a "third submission of additional names is not permitted." *Id.* at 4. The Board invalidated the recall petition because it was sup-

plemented with names more times than allowed by law and regulations.

## II

The issue is whether the Navajo Board of Election Supervisors misinterpreted 11 N.N.C. § 242(C) when it ruled that filing of additional names after initial notice of insufficiency constitutes refiling of an amended petition, and a third submission of additional names is prohibited.

## III

This case concerns an attempt to recall an elected official of the Navajo Nation. The Election Code and the Recall Rules and Regulations contain the procedures for initiating and carrying out a recall.

The recall petition must be filed with the appropriate election officials within 180 days of the date the recall committee is formally established. Section 242(A) makes this clear:

> A petition for recall shall be filed with the Board no later than one hundred eighty (180) days after the filing of the affidavit of the Committee initiating recall proceedings. Failure to file a petition within this period shall render the recall null and void.

11 N.N.C. § 242(A).

From the date the recall petition is filed, the Election Administration has thirty days to review the petition for sufficiency. 11 N.N.C. § 242(B). In addition, Rule 8 of the Recall Rules and Regulations gives the Election Administration the duty of reviewing the petition for sufficiency. Review for sufficiency involves scrutinizing each signature for certain requirements:

> The Administration shall review the petition for purposes of verification of registration of those signing the petition, as well as [e]nsuring that they all voted in the last election for the same office involved.

Rule 8 of the Recall Rules and Regulations. Section 242(B) also states that signatures must be verified and a petition is sufficient "when it appears to be signed by the requisite number of registered voters as set out in 11 NNC § 241(A) and each signatory has complied with the requirements of 11 NNC § 241(E) (3)." 11 N.N.C. § 242(B).

The record shows that the Recall Committee satisfied section 242(A) when it filed its initial recall petition on February 26, 1997 and within 180 days of December 2, 1996 (the date it formally organized as a recall committee). If the Recall Committee wanted to use the full 180 days, its initial recall petition was due with the Election Administration on June 2, 1997. The initial recall petition contained 502 signatures, which the Election Administration verified and immediately informed the Recall Committee of the petition's insufficiency. There is no

problem up to here.

The Recall Committee then filed a second petition with fourteen signatures on March 7, 1997, which the Election Administration added to the initial petition. The Election Administration should not have combined the names to form one petition. Instead, the second petition with fourteen names should have qualified as a refiling of the amended petition. The law is clear that the first filing of a recall petition is the initial petition and a subsequent filing is an amended petition. Section 241(B) states that "[a] single petition is required for each elected official to be removed." Rule 9(C) of the Recall Rules and Regulations states that a recall petition "may only be amended/supplemented and refiled once...." Furthermore, Section 242(C) states:

> In the event a petition is insufficient, the director shall simultaneously notify the board and the petitioners' committee of his or her findings and reasons why the petition is insufficient. The committee may withdraw the petition and within fifteen (15) days thereafter, refile the anended petition as an original petition. The fifteen (15) day period shall be in addition to the 180 day period set out at 11 NNC § 242(A).

11 N.N.C. § 242(C).

After the Election Administration completes verification of signatures on the initial petition, finds the petition insufficient, and informs the recall committee, the committee has fifteen (15) days to cure the defects in the initial petition or refile the petition with additional names. Rule 9 further describes a committee's responsibilities after the Election Administration has determined that a petition has insufficient signatures.

> B. Petitions determined insufficient may be withdrawn by the Committee, provided it is done within 180 days of the filing of the affidavit referred to at §§ 241 & 242. Once the Petition is withdrawn, the Recall Committee may seek additional names, or otherwise correct any problems, and resubmit the Petition within 15 days of the withdrawal.
>
> C. A Petition for Recall may only be amended/supplemented and refiled once, even if 180 days has not elapsed since the beginning of the Recall effort.

Rule 9(B), (C) of the Recall Rules and Regulations.

The Recall Committee argues that if a recall committee does not withdraw its petition, then it can supplement names to its initial petition over the duration of the 180-day period and still have one petition. The Recall Committee claims it did not withdraw its initial petition, therefore, there is no limit on the number of times it may file lists of signatures to reach the number required to force a recall. This is an incorrect interpretation of section 242(C) and Rule 9.

The Election Code and its implementing rules clearly state that a recall committee has only one opportunity to submit additional names upon a finding of insufficiency. 11 N.N.C. § 242(C) and Rule 9(B)-(C) of the Recall Rules and Regulations. A recall committee is given a single opportunity to make up the

insufficiency. Rule 9(C) of the Recall Rules and Regulations clearly states that a recall petition cannot be "supplemented" more than once, "even if 180 days has [sic] not elapsed...." The Recall Committee does not argue that this rule is inconsistent with any statute in the Election Code. See 11 N.N.C. § 12.

In fact, giving a recall committee one opportunity to cure an insufficient petition is reasonable considering that elected officials have procedural and substantive rights to Navajo due process. *See In re Removal of Katenay*, 6 Nav. R. 81 (1989). A person who has ascended to public office through a democratic election has every right to expect fairness during his or her recall. To allow more than two petitions to be filed, or to have signatures filed in "segments," as the Recall Committee argues, would not only tax the Election Administration's limited resources, but would spur claims that the election officials are helping a recall committee in reaching its goal. The latter would trigger denial of equal protection and due process of law claims. The Election Administration does not have the discretionary function of accepting more than two recall petitions and permitting a recall committee to file names in segments.

The Recall Committee apparently argues that because section 242(C) says a committee "may" withdraw its petition, it has a choice of either withdrawing its petition and then filing an amended petition or not withdrawing its petition and having subsequent filings of names counted as part of its initial petition. We do not agree with this interpretation. The word "may" does give a recall committee options: 1) either quit the recall effort after an initial finding of insufficiency; 2) withdraw the initial petition to correct errors on the petition; or 3) do not withdraw the petition but continue the recall effort by filing a second petition containing more names. If the latter two are chosen, the recall petition must be made sufficient within fifteen days.

Another question raised is whether section 242(C) is vague as to the number of times additional names could be submitted after an initial finding of insufficiency. Although the section does not spell out the number of times names may be submitted, the implementing regulations address the matter. Rule 9(C) of the Recall Rules and Regulations make it clear that a recall petition "may only be amended/supplemented and refiled once, even if 180 days has [sic] not elapsed since the beginning of the Recall effort." The law is clarified by the rule. The Board has power to promulgate rules to implement the Election Code. 11 N.N.C. § 12. The alleged vagueness is not present.

The Recall Committee blames the Election Administration for its failed recall effort. The Recall Committee claims that it "was never told [by the Election Administration] of the need for refiling their petition"; it "never received a letter from [Election Administration] notifying them of any insufficiency"; it was "never ... told [by Election Administration] that they may withdraw their petition to refile"; it relied on instructions from the Election Administration; the Election Administration did not explain the "recall process ... in reasonably clear terms" to members of the Recall Committee; and it was never given a copy of the Recall

Rules and Regulations. All these claims fail.

The burden of knowing and following the laws and rules on the recall process rests with a validly formed recall committee. After all, it is common *Dine'* knowledge that one does not undertake a monumental task, such as the recall of a *naat'aanii*, without preparation, planning, and understanding the process to accomplish that end. Even the Election Code requires a recall committee to be "responsible for circulating and filing a recall petition." 11 N.N.C. § 241(B). Knowing and following the laws on the recall process is part of that responsibility. The Recall Rules also places the responsibility for the recall effort on the Recall Committee. Rule 1 makes this plain:

> It is the ultimate responsibility of those pursuing the recall of elected officials to [e]nsure that all legal requirements for recall are followed. In addition to what is specifically required in the Election Code, Recall Petitioners' Committee shall [e]nsure that all required documents are filed and all time lines followed.

Rule 1 of the Recall Rules and Regulations.

The Recall Committee also argues that people who signed the recall petition should not be permitted to withdraw their names from the petition. A decision on this issue is not necessary to decide this appeal. We will therefore reserve it for another day.

## IV

We affirm the decision of the Navajo Board of Election Supervisors. The Board's interpretation of 11 N.N.C. § 242(C) is correct. The Board properly invalidated the recall petition.